Shipyards. The uncontested issue, I believe here legally, is the eight corner rule. The eight corner rule looks at the four corners of the insurance policy and the four corners of the complaint. If there is any possibility that any allegation could be covered, then that triggers the obligation to defend. And as Your Honor noted in Lamar advertising, that the policy and the complaint need to be viewed liberally, need to be construed in a liberal fashion to encourage coverage. Let's talk about the specific allegations in this complaint. There are two basic events that the plaintiff alleges, that the United States, in 2001, some calculations were performed. And the United States says that Bollinger used the wrong hull thickness and Bollinger designed the modulus wrong in the computer and got a bad result. There's not even an allegation, couldn't even arguably be an allegation that there was any predetermined level of fitness that was implied in that or that was in that sink or it just had a, it said it had a catastrophic hull failure. Right. The Matagorda cracked, the hull cracked. Right. And based on that cracking, the government decided that it could not be used and it didn't use. Frankly, it sounded like something out of Popeye the Sailor Man to me. But what bothers me about your allegations in your brief is your total failure to acknowledge all of these conversation back and forth between Bollinger and the Coast Guard about the structural strength of the extended hull. Well, and I did point to Judge Vance's decision in the U.S. Coast Guard case, mind you, where Judge Vance said there on various places in that, but specifically at page 18 among others, that there was no statement or insurances by Bollinger as to anything reading from that. She said on page 18, the United States does not allege that the Bollinger's contract required a specific section modulus and it is vague exactly as to what Bollinger specified as design requirements. And it goes on to say, she says, Bollinger entered data into the statistics. Now that's what happened in 2000 and that's part of what this case is about. She says, the complaint does not say which physical properties were changed or how the changes affected the vessel constructed. So there is no set standard in these calculations. And we get to the negligent aspect in paragraph 51 and 52 of the complaint. What they're saying is Bollinger negligently failed to tell the Coast Guard. Not about 3,113 cubic inches of steel in the modulus. What is arguably in that is Bollinger forgot to tell the Coast Guard or didn't tell the Coast Guard that it put the wrong plate thickness or that it was or wasn't. Because there's allegations that Bollinger was talking to people internally, but Judge Vance found that Bollinger, the Coast Guard knew the ABS wasn't consulted. So at the end of the day, the Coast Guard knew and understood all this. Judge Vance, as you know . . . Are you talking about this case or another case? This case. All right. Judge Vance . . . And I'm trying . . . I thought I was listening, but I thought you said something about another case Judge Vance had. I said this case. The Bollinger . . . The United States government versus Bollinger is the underlying case. The Coast Guard. The Coast Guard. That's a First Claims Act case and she got reversed by this court. Yes, she did. And this court said, and I do want to point out to this court, this court said, we conclude that the United States alleged sufficient facts in its complaint to allow a fact finder to infer. It's important because reading the complaint broadly, reading the complaint broadly, she said the United States didn't allege false claims. Y'all concluded, well, you allege facts that could allow an inference. And they said either no, you said either no, or that Bollinger had a reckless disregard. And that's negligence. That's not intent. When you get to the exclusion 28, 28 really talks about, if you read it, it really talks about a warranty. It's something that we promised in the way of a level of fitness, a warranty. There's no allegation that Bollinger warranted anything to the government or that there was a breach of warranty. And there's no allegation by the government that Bollinger specifically set out a level or a standard of performance. Was there something called a longitudinal strength analysis? There was a longitudinal strength analysis. Was that done prior to the government agreeing that Bollinger should go forward with doing that to these eight vessels? Yes, that was a preliminary calculation that was done by a number of bidders, Bollinger. Was that important to Bollinger to do that? And people weren't just, weren't doing it for kicks. It was important to somebody. No, I think it was important. I'm not suggesting it wasn't important. And nobody, the government has not even alleged as... And what was the purpose of that analysis? The purpose of that analysis was to try to show that 13 foot insertion in these hulls could be done and the vessels could operate. And there is really no allegation by the government as to what the correct figure should have been or as to where Bollinger made a mistake. What we do know is something happened to it and it couldn't withstand whatever this analysis said it could withstand. Is that right? We do know a crack occurred in the hull of the Matagorda. What we don't know is whether the crack occurred in the hull of the Matagorda because there was a construction defect or whether the crack occurred because of a design flaw or whether the calculations did or didn't make a difference. What we do know is the government has alleged that there was a crack in the hull. What we do know is the government has alleged Bollinger put the insert in the hull and we do know the government has alleged that Bollinger did calculations wrong. Well, now we, this case has been going on for many years now, so there are more than allegations at this point about what caused the hull failure. So you're just telling us what's in the pleadings here, I suppose. And the eight corner rule applies to the pleadings. And I was not involved and am not involved in the case involving the government. My understanding, however, is that that case was dismissed on the pleadings or summarily based upon Judge Vance's reading of the pleadings in which she found, among other important facts, that the government did not allege a specific level of performance. So, I mean, she's reading the pleadings. She can't find in one case the exact same pleadings. Well, I, when you say, I mean, I'm more concerned about exclusion 32 than 32 E and F than I am about 28. But as far as predetermined level of fitness or performance, I mean, it's not very, it doesn't take much of a stretch or scientific knowledge to say that you're buying something that has to do with the hull of the boat and you expect the boat to float. Your Honor. Your Honor, that's a pretty small level of predetermined. If, if you take that analogy, what that says, then you could never have any product insured by this policy because every product has some expectation of performance. If you get in a car, you It says or other and or guarantee of fitness or level of performance, which seems to me very similar to the UCC standard. But there is No warranty, implied warranty of fitness for a particular purpose. Well, but there is no requirement in the contract and there was no allegation in the complaint. Well, of course, because this is a comprehensive general liability policy, is it not? It is. And it doesn't want to cover breaches of contract. But there's no allegation of breach of contract in this policy. At the very least, paragraph 52 says negligence. They don't. Well, I wouldn't say that either if I were the general, if I were the liability insurer, you know, if I were your guys, I wouldn't mention contract either. That's what the exclusion is about, isn't it? No, your exclusions can't be based about the final conclusion of facts, what the final fact finder decides. Exclusions have to be based on what is alleged in the complaint. I understand. I'm not talking about the eight corners rule here. I'm just talking about the insurance. The purpose of general liability insurance is is to cover accidents or occurrences. It's not to cover breaches of contract. And I took it, maybe I'm wrong, I took it that the point of this paragraph 28 was to exclude what would normally be a breach of contract. I take 28 to exclude warranty clauses. I think that's clear. Warranties are in contracts. Warranties are in contracts. Right. There is no warranty in this, in this complaint. There is no breach of warranty claim in this complaint. Right. There may have been a warranty in the contract, but that's not being alleged in the complaint. I will address, since you raised exclusion 32, only briefly, exclusion 32, there's E and there's F. But the key of that is that, first of all, the overbroad nature of that is not specific. And when you're reading exclusions, you have to be specific. But the second thing is that it deals with specific intentional acts, which, by the way, the intentional acts, she found no intentional act. But the word we're talking about here is deceptive acts. Now, the, the, what this court found and what the government pled in paragraph 10 of its complaint, I believe it is, you can check, but where they, they, they pled the FCA, what, what this court found is that the FCA includes reckless disregard. Now, reckless is negligence. Reckless is not intent. It may, maybe you shouldn't have been reckless, but it is not intent. So the only allegation is FCA. And in the introduction where the government describes what they mean by FCA on part C or D of their definition of FCA, they mentioned reckless. And this court, when it reversed Judge Vance's decision, you held that there are sufficient facts to allow a fact find to, to infer reckless disregard. So we have a, a covered claim. Reckless is not excluded under the policy. Deception is. Reckless is not. Finally, we get to the, I think we still need to get back to paragraph 52 because putting aside the other stuff. Let me get back to that one more question. 32, actual or alleged liability arising out of or incidental to any alleged violations of any federal or state law regulating deceptive acts. Now, you don't, you don't deny that it's categorically that the false claim, the U.S. False Claims Act is, generally speaking, a deceptive act statute. Part of it can be. But what I would say is this. If you're going to, if you're going to exclude government acts in a policy, you have to be specific. Now, here, their specificity was only using the word deceptive, not using, using the word reckless. Well, but it says here, deceptive acts and practices in, in commerce, including without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act. I mean, what you were, what you would be requiring from what you're saying is that the exact, let's say it's a conspiracy and restraint of trade under the Sherman Act, and you'd have to, you would say that this exclusion wouldn't apply unless they pled some sort of deceptive act in connection with the conspiracy to restrain trade. But isn't F, I think F and, and E are really basically read together. What they're trying to exclude is acts of dishonesty and intentional fraud. Well, that may be the case where it says dishonesty, but on the, but the, the preface of E is liability arising out of alleged violations of any federal or state law governing antitrust or, you know, or deceptive acts or practices. It's a generic description of the types of legal allegations that are excluded. Part of the FCA is that, but part of the FC is reckless disregard. Regardless of whether you find certain paragraphs in the complaint, alleged fraud, that's excluded. And I don't say it's alleged there, but even if you find a paragraph or two in the complaint that alleges it, if you find one paragraph, that's all you need, is one sentence in the complaint. And what, and what's your reasoning that you have to construe exclusions narrowly or that what? The burden of proof is clear in all the case law that it's up to the employer to, excuse me, up to the insurer to, to prove and they have to be construed in favor of finding coverage. Now you have to prove, you have the burden on exclusions. No, they have the burden on exclusions. I have the burden on, on coverage. They have the burden on exclusion. She found coverage. The exclusions of what we're dealing with, they have the burden on exclusions. And look, putting aside everything else, paragraph 52 doesn't mention fraud, doesn't mention dishonesty, doesn't mention deceit, doesn't mention FCA. It just says we were negligent. That's all it says. So even if you found something else in the complaint, and by the way, for one through 16 of the complaint, don't even discuss fraud or negligence. They just say we were, excuse me, don't discuss fraud. They discuss errors in calculations. They don't even mention, don't even hint that there was any fraud. Paragraph one through ten. What about the deal where it says, let's not tell them about such and such, but it doesn't comply with the ABS or whatever? If that paragraph were excluded, and I'll address that on my, on my rebuttal. If that paragraph were excluded, the other paragraphs would be covered. All right. Thank you, sir. All right. We'll shift gears to Excel. Mr. Ingram. May it please the Court. This case presents the question whether allegations of fraud, allegations of misrepresentation and the like are covered under a general liability policy. They are not for six different reasons. Those are that there was no, that there was a predetermined level of fitness exclusion, the deceptive practices exclusion, the dishonesty exclusion. The claims were not because of an occurrence. They were not because of property damage and because Bollinger breached the no action warranty clause. So the first thing I want to do is the district court was, ruled that two different exclusions applied here because that's all she had to, in order to deny coverage. First one is she applied exclusion 32, dishonesty, for the allegations of false claims and false records and fraud because they were stipulated to be excluded by Bollinger to her in the, in the arguments below. Now, with respect to 28, she applied that then to the allegations of negligent misrepresentation and unjust enrichment. So let's look at exclusion 28. And you have to look at exclusion 28 with its definition. The failure of your work to meet any predetermined level of fitness and any consequential damages from that. Now, your work is defined, page 3130 of the record in the policy, as including representations about the quality of the product. So any representation of the product that did not meet a predetermined level of fitness is excluded and all consequential damages from that. So all we have to find is a representation that violated a predetermined level of fitness. So let's look at the allegations in the pleadings under the eight corners rule. So the first one is paragraph 18. And that is a required section modulus of 3,113 inches in the contract. Next, paragraph 21. The contract required the subcontractors, which includes Bollinger, to provide the Coast Guard with the contract data requirements document, a hull load and strength analysis, this is contract required, to verify that the design met program and contract requirements. So part of the contract requirements is the 3,013. The strength analysis, they have to verify that and certify that. Bollinger did submit the required contract document as reporting an actual section modulus of 5,232. And then the complaint, none of the vessels possess the longitudinal strength represented by Bollinger in the contract form. So it fits exactly. The argument that was made today by Bollinger is there's no predetermined level of fitness. That's not true. There is a predetermined level of fitness. It's required that there be three, it's required one, that there be 3,113 cubic inches. Number two, that has to be certified by Bollinger in the contract data requirements. Well, suppose the actual modulus for whatever it was was 3,012 instead of 3,013. You would be arguing that the exclusion is still prevents coverage? If the government is suing for that. I'm asking you, you're a professor, if it were a variance of 3,012 versus 3,013, would that require the application of the exclusion? That shows why this isn't covered. It's not covered for a number of reasons. One, there's no occurrence, there's no property damage, and that's because the allegations here for making a false claim. That's what the allegation is. They're saying Bollinger made a false claim. No, they're saying it violated the False Claims Act, which is a different thing. It's a different thing. Right, but the allegations are that you made a false claim for money under the FCA. That's what the FCA, there are two allegations under the FCA. You made false statements, false representations and documents, and you made a false claim. I know, but the definition of falsity is different under the False Claims Act. Right, but the point is, if they made a claim, if the government makes a claim that you gave us 3,112 and you were required to give us 3,013, and that's what the government was suing for, then that would be excluded. So what happened here? That would make, you know, you can probably almost find any variation in a product as complex as shipbuilding. You can, but the government's got to sue for making under the False Claims Act first, and so if the government, it's, the question is does the government make a claim? The government's not going to make a claim just because you missed by one cubic inch. The government's going to make a claim because No, we don't know that. Well, we don't know that. We don't know what a related claim. But if the government sues them because they breached the contract and not providing the representative, the representative level The breaches of the contract are not actionable under the False Claims Act, or at least that's a highly disputed proposition, so just stick to the facts alleged in the complaint. Well, I'm trying to, your question was a hypothetical, and that's not this hypothetical. This hypothetical, the government is suing because the representative, the represented level I don't know, I don't want you to characterize what the government is saying. I need you to tell us exactly what the government is saying that falls under the exclusion. Correct, and that is a problem I found in both of your briefs. You're both characterizing, you know, for your own purposes, the government's allegations, and we need a very, we need precision. Right, and so 18, there's a required section modulus of 3013, paragraph 21, they have to provide their certification in the contract data requirements form, the whole load and set program requirements. They did that with a CDRL, the contract data requirements form, saying it was 5232, and that was not correct. They misrepresented that, and those are the government's allegations, and that's why the government is suing. Does it say misrepresented, or does it say not correct? It says none of the vessels possess the longitudinal strength represented by Bollinger. That's the crux in paragraph 37. That's pretty weaselly, okay. And so, as the district court found, there's a representate, there's a contract requirement, they're required to represent that they satisfied that. They did not satisfy that, and so it directly falls within paragraph exclusion 28, and the law points support that. The only cases that Bollinger cites are cases where the exclusion in the policy, like in the OSCA case and the Todd Shipyard case, excludes liability for failure of the insured's work or products to meet any warranty or representation, and does not include the consequential damages, whereas in our case, there are two reasons why those cases don't apply. One of them is because the consequential damages are included in ours, and any consequential damages would include these types of damages. Those were not involved in the Fifth Circuit cases. And secondly, because your work is defined as the representations, and so when they talk about your work, that work includes the representations, and it's the representations, in this particular case, the representations are that the vessel as a whole would have a section modulus of 3,113 represented to be 5,232. Now, I want to talk briefly about the exclusions of the deceptive trade practices and the dishonesty exclusions, because in the district court, those were conceded by Bollinger to exclude the fraud and the FCA claims, and now they want to raise them on appeal after the district judge relied upon them in her order. Well, I mean, I don't think it's unreasonable for them to say that the Fifth Circuit took a different tack on that issue. Well, except for the fact that that was at issue in the government case in the original And this, all the briefs to this court throughout the entire case have been about the reckless disregard standard, so they knew all along that that was a standard, and that's in the original complaint, and on an eight corners analysis, the question of coverage, as he argued today, is reckless disregard has been his allegation from the beginning, and so as a result of that, how can you concede that to the district court when that's what's being The allegations are excluded on those grounds because, as the Supreme Court said when they talked about the FCA in the Cook case, they said the purpose of the FCA is to root out deceptive practices. It is a deceptive practice statute, and as you noted, Judge Jones, it is without limitation that statutes are enunciated in the, in Exclusion 32, and as to dishonesty, to say that reckless dishonesty is not dishonesty, reckless dishonesty is dishonesty in the case It's not dishonesty and this is, again, it's a reckless misstatement is not necessarily dishonest. Right, but the allegations are making I can say, I can say, you know, I think someone's argument, I think someone's eye color is green when it's really plainly light blue, and I may be that I'm just viewing it in the wrong light or something like that at the time. Right, but the allegations are making a false statement, and they have to prove that it was false, and yes, the reckless standard is more than negligence. It's more than gross negligence. But it is less than, it is less than intention to deceive as required for fraud. Right, but all of the cases that have dealt with this, and a perfect example is the General Starr National case, which we cite in the brief on page 35 to 36. The court ruled that the allegations in that case were all levels of FCA knowledge, including reckless, and the court ruled that all levels of that conduct were excluded, and so the point is that reckless is still dishonest for a dishonest instance. Well, we're talking about insurance here, and we're talking about what's covered and what's not covered, and so I think, you know, again, if there's an unclarity in the scope of an exclusion, I think we construe it in favor of the insured. That's right, but when they talk about reckless, this is still a question about, it's a question of law. It's a question, does reckless dishonesty count as dishonesty? And the courts have all ruled, the courts have all ruled that it does, that have addressed this. Reckless misrepresentation necessarily count as dishonesty. Yes. For purposes of construing an exclusion in a policy. That's exactly right, Your Honor, and so the, I like the Washington case that we cited, the MSO Washington case that said liability under the FCA involves dishonesty, and so we'll rely upon that as to what constitutes dishonesty or not. Now, I do want to talk briefly about property damage and about the condition preceding in my last few minutes up here. We argued occurrence, that there was no occurrence in our brief, and Bollinger did not respond to that, so there is no argument from them opposing the fact that there was no occurrence, so that the claims would not fall within the insuring agreement. With respect to property damage, Continental is going to argue that as well, because the policy requires that the damages alleged be because of property damage, and they are not. Why not? Because it's a perfect example, that's the Seventh Circuit case called Healthcare Industry versus Moments Meadows, and in that Seventh Circuit case, it was very similar to this one. They certified that the standard of care had been met for their patients, but the residents sustained injuries due to the fact that substandard care was given anyway. Well, excuse me, but this is, you know, the boats sank, or the boats wouldn't float, or something like that. It's hard for me to believe that that's other than property damage. Well, it's not, the point is that an FCA allegation is not because of property damage. It's because of false claims. Their claim is, you said you were going to give us this, and you didn't give us this. It's not that they're claiming that they are entitled to damages because, and the damages they seek are for false claims. They're not because the vessels sustained damage, and so the cases that have looked at this, all the cases, there are a whole series of FCA cases that we have cited, and not one of them finds that the damages in an FCA case are because of property damage. And the because language is in your insurance agreement? Is that what you're saying? In the insurance agreement, there has to be, the damages sought have to be because of property damage, not because of false claims. Okay. And the district court found that with respect to Continental, but they didn't find that for us because they found that, Judge Vance found that the case was excluded under 28 and 32. So she didn't have to reach that for us, but she did have to reach that for Continental, and with respect to Continental, she found that the language in cases like Moments was compelling. So for those reasons, we respectfully pray that the judgment be affirmed. All right. Thank you, sir. Mr. Emmett, Continental. May it please the Court, John Emmett on behalf of the Continental Insurance Company. It's our position that Judge Vance correctly found there is no possibility of coverage under the second, third, and fourth-layer excess policies issued by Continental to Bollinger. With respect to the past losses, the only alleged past losses are for $9 million, which is defense costs, which is beneath the $26 million in underlying limits underlying the Continental policies. So past losses are clearly not covered. As to future losses, the only remaining claims in the underlying litigation are brought under the False Claims Act. Those claims are not covered. The Continental policy only ensures claims arising, quote, on account of bodily injury or property damage. In the False Claims suit, the government is seeking a return of monies that it wrongfully paid to Bollinger because of its misrepresentations about the strength of the vessel. It is not seeking recovery for property damage. This is the precise result that the Seventh Circuit reached in the Moments Meadows case that the District Court relied upon. There were clearly personal injuries in the Moments Meadows case, but that's not what the government was seeking recovery for. It was seeking recovery for the false payments that it made based upon the false misrepresentations of the nursing home. The same is true here. That's what they want from Bollinger. So there's no possibility of coverage under the Continental policies for those claims. No bodily injury, no property damage. Now, we also contend that even if there is some allegation of property damage, or it could be construed that there is, the dishonesty exclusion of the first-layer excess policies that underlie the Continental second, third, and fourth-layer policies, its exclusion in A1, that policy is in the record at Record Document 146-7, exclude coverage for the claims under the False Claims Act. We agree with Excel that a reckless disregard of the truth is dishonest, and Bollinger certainly cites no case to indicate otherwise. So for those reasons, we submit Judge Vance was correct. Now, in their reply brief, Bollinger raises some arguments. They raise the AZI decision, unpublished New Jersey District Court case, which found coverage for an FCA claim under a liability policy. Clearly distinguishable. Employment practices liability policy that specifically ensured the conduct alleged in the complaint. And it didn't contain the on-account love language of my policies, but in connection with language. So the causal connection was greatly reduced there. They speculate that future amendments to the pleadings may create coverage. That's speculative, not before the court, and in any event, simply not true. Any claims that the government may have now are clearly prescribed, just as the negligent misrepresentation claim was found to be prescribed below. They suggest the losses may exceed $26 million, to be sure that's true, but not covered losses. And again, they raise the reckless disregard standard as their salvation. I submit that Bollinger clearly waived that argument in oral argument before the District Court in response to a specific question, conceding that the dishonesty exclusion applied to the claims under the FCA. So for those reasons, we request that the court affirm the judgment below in favor of Continental. Thank you. Thank you, sir. Back to you for rebuttal, Mr. Wright. What the underwriters would have you do in this case is ignore the eight-corner rule and all the long line of cases that go along with that, and instead cherry-pick one or two paragraphs in a complaint and say, well, we believe those aren't covered and therefore there's no coverage at all. But the important thing about the eight-corner rule is that if anything alleged in the complaint is potentially covered, then there's an obligation to defend. Paragraph 52 of the complaint doesn't mention fraud, doesn't mention the FCA, doesn't mention anything about alleged fraud or have to pay the government back the money. It says defendants failed to exercise reasonable care or competence in communicating information. That is a strict negligence claim. In fact, the government even entitles it a negligent cause of action. But I realize how you label a pleading does not necessarily mean that that's what you're alleging. But clearly the government is alleging negligent failure on Bollinger's part to tell the government that Bollinger originally used steel that was too thick and that they made a mistake. The second thing is about property damage. My opponents talk about this being a case or not a case of property damage. And the Esau case says you decide based upon the terms of the policy. You look at the terms of the policy. And in this case, paragraph 37 of the complaint says they're claiming the vessels are not usable. That's loss of use. Specifically, the policy defines property damage not only to include cracks and sinking of boats, if that were the case, but it also specifically includes loss of use. Separate definition. That's in their definition. Now, counsel says, well, gee, fraud and dishonesty, well, you know, we think that's covered. We could have had a definition of your terms in your policy. You didn't. Nowhere does the policy suggest, and remember, policies are strictly construed in favor of coverage. Nowhere does the policy say you're not covered for reckless measures. You're not covered for reckless disregard. They could have put that. They didn't. Well, why didn't you waive that argument? If you read what I said and if you read what I said in my brief, I did not waive that argument. What the court asked me specifically was about common law fraud, okay? And I said I agree that common law fraud is not covered. Intentional fraud is not covered by the policy. And I'm not standing here arguing today that intentional fraud is covered by the policy. What I'm saying is that FCA includes reckless disregard. And she never asked me about that. And I never considered it to be negligence. And this court considers reckless disregard to be part of the FCA because you remanded the case to be determined, you said, that the complaint alleges enough facts that an inference of reckless disregard could be inferred. I think reckless disregard is clearly negligence. It doesn't reach the level of fraud. And it's  Dishonesty? No, it's definitely not dishonesty. I don't even think it raises to the level of gross negligence. But regardless, it is something a long way away from dishonesty. In fact, if it was dishonesty, they wouldn't have had to include it as a fourth element of the FCA. The fact that they specifically set it out as a fourth element means it's not dishonesty, it's something else. As far as, there's been a lot of discussion about predetermined level of fitness. And I challenge the court, Judge Vance has already been through this in the government ruling. There's no allegation of failure to meet a predetermined level of fitness. It doesn't appear. Now, there's some discussions about what they expect, what the government expected, but the government has not alleged there was any predetermined level of fitness. Well, let me say here in the earlier opinion in this case by the Fifth Circuit, in August of 2001, Bollinger was notified that the Coast Guard would require Bollinger to certify compliance with ABS structural standards. Yes, but she found, first of all, she found that when we did our calculations and before we entered into the contract, there was no agreement to do anything. I mean, at that predetermined level of fitness means warranty. There is no allegation by the government. Well, certifying compliance with ABS structural standards sounds like a warranty to me. Even if that paragraph is predetermined, it's only one of 52 paragraphs. Even if that one is excluded, all I've got to do is prove one's covered and they've got to defend me. And 52's clearly covered. All right. Thank you, Mr. O'Rourke. Thank you for, all counsel, for your briefing and